IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


**ROBIN WOOD,**

    **Plaintiff,**

v.                                                                              CIV No. 12-0775 LH/GBW

**HARRY LIFORD BENNETT and**
**WESTERN EXPRESS,**

    **Defendants.**

## MEMORANDUM OPINION

**THIS MATTER** comes before the Court on Defendants' Harry Linford Bennett and Western Express's Motion for Partial Summary Judgment on Plaintiff's Claims for Punitive Damages.  (ECF No. 39).  The Court, having considered the motion, briefs, evidence, arguments, relevant law, and otherwise being fully advised, finds that Defendants' motion is **granted in part and denied in part.**

**I.  PROCEDURAL BACKGROUND**

Plaintiff filed a Complaint for Personal Injury with the Second Judicial District Court for the State of New Mexico ("Complaint") on May 11, 2012.  (ECF No. 1-A).  The Complaint alleged liability and damages for injuries arising from a vehicular accident which occurred in Albuquerque, New Mexico on October 26, 2011.  Count I of the Complaint alleged negligence, negligence per se and respondeat superior.  *Id*. ¶¶ 17-30.  Count II of the Complaint alleged punitive damages, specifically that "[t]he acts and/or omissions of Defendants were of such an egregious nature, in reckless, wanton and total disregard to the rights of the public, including

1

Plaintiff, that in addition to actual damages ascertained and demonstrated by a preponderance of the evidence, punitive damages or exemplary damages to punish and deter this type of act and omission from occurring in the future are appropriate." *Id.* ¶ 32.

Defendants removed this action to the United States District Court for the District of New Mexico pursuant to diversity jurisdiction on July 17, 2012.  On May 20, 2013, Defendants' motion for partial summary judgment was filed, as was a Stipulation of Liability, approved by counsel for all parties, which stated:

> The Defendants, Harry Linford Bennett and Western Express, and Plaintiff, Robin Wood, hereby stipulate that Harry Linford Bennett was negligent and that his negligence was a proximate cause of the accident identified in the Plaintiff's Complaint.  The Parties further stipulate to *respondeat superior* in this case with respect to negligence.  The Parties do not stipulate as to any other issues, including comparative fault, the Plaintiff's injuries, and the Plaintiff's damages and these issues shall be left for the trier of fact.

(ECF No. 45).  This stipulation specifically excluded the issue of damages and rendered moot any factual disputes raised in the summary judgment briefs on the topic of causation.  Bearing in mind the effect of this stipulation, the Court will proceed to consider Defendants' motion to foreclose punitive damages.

## II. FACTUAL BACKGROUND

The parties do not dispute these facts:  Defendant Western Express is a Tennessee corporation that operates tractor trailer units on New Mexico's roadways.  At all times material hereto, Defendant Bennett was an employee of Defendant Western Express.  On October 26, 2011, Plaintiff was traveling eastbound on Ouray Road in Albuquerque, New Mexico. Defendant Bennett was making a left hand turn out of a Wal-Mart parking lot and a collision

occurred between the tractor trailer he was driving and Plaintiff's vehicle. Defendant Western Express maintained the tractor and trailer involved in the collision.

Although he denies it in Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment as to Punitive Damages (ECF No. 55), at his deposition Plaintiff testified that he had no knowledge of Defendant Western Express's procedures for vehicle inspection, driver supervision, or for its establishment of safety policies and safety training programs. He also testified that he had no knowledge of Defendant Western Express's training of its employees regarding vehicle operation, maintenance or inspections. (Def.s' Ex. A, Wood Dep. 123:25-125:05). Further, Plaintiff testified that he had no evidence that Western Express used wrong or improper procedures for vehicle inspection, employee driver supervision, or for training of its employees in vehicle operation, maintenance or inspection, or for establishing safety policies or safety training programs. (*Id.* 125:14-126:05).

The only other evidence that has been presented to the Court, relevant to the pending motion for summary judgment, is additional deposition testimony of Plaintiff, relating to the conduct of the truck driver, Defendant Bennett, at the time of the collision. Plaintiff testified that when Defendant Bennett ran the stop sign, he was looking at him, laughing; that he proceeded to flip him off, and continued to laugh. (Pl.'s Ex 1, Wood Dep. 78:06-78:09). Plaintiff testified that the tractor trailer came over the front of his vehicle and then Defendant Bennett stopped laughing (*Id*. 78:13). After the collision, Plaintiff and Defendant Bennett had a conversation during which Bennett said, "You motherfucker, if you think you're getting a new car out of this, you got something coming." (*Id*. 92:02-92:04)
.

### III. LEGAL STANDARDS

An important function of summary judgment is to eliminate factually unsupported claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In this case, Plaintiff has sued both Defendants for punitive damages. In their motion, these Defendants seek summary judgment in their favor, seeking dismissal of Plaintiff's claim for punitive damages. Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed.R.Civ.P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* (internal quotations omitted).

Initially, the moving party bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Under New Mexico law, defendants may be liable for punitive damages under either a direct liability theory or a vicarious liability theory. UJI 2013, NMRA 13-1827. Under a direct liability theory, a defendant may be directly liable for punitive damages if that defendant

engaged in conduct that was malicious, willful, reckless, wanton, fraudulent or in bad faith. Only the first four of these types of conduct are at issue in this case, for purposes of this motion.

Under a vicarious liability theory, a principal or employer may be vicariously liable for punitive damages for the misconduct of its agent or employee, if the conduct of that agent or employee falls within the type of conduct that would lead to direct liability, explained above, and: (1) the agent or employee was acting in the scope of his employment by the principal or employer and had sufficient discretionary or policy-making authority to speak and act for it with regard to the conduct at issue, independently of higher authority; or (2) if the principal or employer in some other way authorized, participated in, or ratified the conduct of the agent or employee. *Id.*

The Uniform Jury Instruction on punitive damages defines the four types of relevant conduct. Malicious conduct is defined as the "intentional doing of a wrongful act with knowledge that the act was wrongful." Wilful conduct is the "intentional doing of an act with knowledge that harm may result." Reckless conduct is defined as "the intentional doing of an act with utter indifference to the consequences. When there is a high risk of danger, conduct that breaches the duty of care is more likely to demonstrate recklessness." Wanton conduct is "the doing of an act with utter indifference to or conscious disregard for a person's [rights][safety]." UJI 2013, NMRA 13-1827.

In the Conclusion section, this jury instruction states, in part, that punitive damages are "awarded for the limited purposes of punishment and to deter others from the commission of like offenses." *Id.*

The Committee Commentary to this UJI notes, citing *Clay v. Ferrellgas, Inc.*, 118 N.M. 266 (1994), that the risk of danger posed by a tortfeasor's conduct is a valid consideration in

determining whether the conduct rises to the level of recklessness necessary to show a culpable mental state.  Further, the Committee stated:  "Thus, as the risk of danger increases, conduct that amounts to a breach of duty is more likely to establish the requisite culpable mental state to support an award of punitive damages."

The Committee Commentary also indicated that in some cases it may be appropriate to modify this general form of instruction to instruct the jury clearly and correctly on the law.  The Committee provided the following as an example of direct punitive damages liability:  "If you find that the conduct of Truck Driver in his driving of the vehicle leading up to the accident was reckless or wanton, then you may award punitive damages against him."

### IV.  ARGUMENTS OF THE PARTIES

#### A.  Defendants' Arguments

Defendants argue that Plaintiff has no evidentiary support for his claim for punitive damages against either of them.  Specifically, Defendants contend that the evidence set forth by Plaintiff is insufficient to create an issue of fact which a jury could resolve with a finding that Defendant Bennett's conduct was malicious, willful, reckless, wanton or indicative of an evil motive or culpable mental state.  Furthermore, they argue that, given the lack of evidence of such misconduct by Defendant Bennett, there can be no evidence that Defendant Western Express participated in, authorized, or ratified such [nonexistent] conduct.  Accordingly, they argue that there is no genuine issue of material fact on this punitive damages issue that remains for trial.

**B.  Plaintiff's Arguments**

Plaintiff argues that summary judgment should be denied to Defendant Bennett, due to the undisputed evidence before the Court that he intentionally ran over Plaintiff's car with utter indifference to the consequences. Plaintiff argues that this is not a simple case of inattentive driving, but rather, is a matter involving a highly dangerous 18-wheel tractor trailer truck, in which the driver of the truck offered an obscene gesture, and was laughing as he drove over the front end of Plaintiff's vehicle. Plaintiff characterizes Defendant Bennett's conduct as wanton, egregious, reckless and malicious. He contends that he has met his burden because he designated specific facts which constitute sufficient evidence in his favor, such that a jury could return a verdict against Defendant Bennett for punitive damages.  Arguing that punitive damages do not rely solely on a defendant's intent of harm, but also involve assessment of disregard for the safety of others under the relevant circumstances, Plaintiff urges that the state of mind of Defendant Bennett at the time of the occurrence must be a question left for the jury.

Plaintiff also contends that Defendant Western Express is not entitled to summary judgment on punitive damages, arguing that it was reckless in its hiring and training of Defendant Bennett.  Plaintiff argues that, in this instance, a jury should be permitted to evaluate the totality of the circumstances, including actions at the scene, in its determination as to whether Western Express should be punished for its reckless conduct as an employer.

**V.  LEGAL ANALYSIS**

**A.  POTENTIAL DIRECT LIABILITY FOR DEFENDANT BENNETT**

In their motion, Defendants argue that there is no evidence that they ever acted with a culpable mental state sufficient to support Plaintiff's claim for punitive damages.  Plaintiff

responds with submission of his deposition testimony, describing the conduct of Defendant Bennett that he contends amounts to the type of egregious conduct that justifies submission of the issue of punitive damages to the jury.  In their Reply Brief, Defendants submit no evidence to refute Plaintiff's testimony about Defendant Bennett's conduct on the day of the collision.  Defendants' main reaction to Plaintiff's proof is that this testimony is inadmissible under Federal Rule of Civil Procedure 56, and that the Court should disregard it because it is "self-serving" and does not constitute independent evidence.

In fact, Plaintiff's submission of his sworn deposition testimony, setting forth his personal knowledge as to what he observed at the time of the collision, is entirely appropriate.  Rule 56(c)(1)(A) states that a party may use a deposition to support an assertion that a fact is genuinely disputed.  Plaintiff has met his burden to produce evidence, capable of being offered at trial in an admissible form, showing that a genuine dispute of material fact remains for the factfinder to resolve.  The Court does not reject Plaintiff's testimony because it is self-serving; indeed it would make little sense for a party to submit evidence that is not self-serving.  The Court will accept it for purposes of this motion because it is based on first-hand observations and averments of specific facts that satisfy the requirements of Rule 56.  *See Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

Specifically, Plaintiff's testimony sets forth facts that when Defendant Bennett ran the stop sign, he was looking at Plaintiff and laughing; that he made an obscene gesture toward Plaintiff and continued to laugh until the time that his tractor trailer came over the front of Plaintiff's vehicle.  This testimony is undisputed.  The Court concludes that this evidence of Defendant Bennett's conduct potentially falls within the UJI's definitions of, at minimum, reckless and wanton conduct.  Plaintiff has created a genuine issue of material fact as to the

culpable mental state of Defendant Bennett under a direct liability theory. Plaintiff's testimony constitutes sufficient evidence for his punitive damages claim against Defendant Bennett to survive summary judgment.

### B. POTENTIAL VICARIOUS LIABILITY OF DEFENDANT WESTERN EXPRESS

As noted above, Defendants' first argument is that Defendant Bennett did not engage in any conduct which would give rise to punitive damages. Defendants then argue that, given a lack of such conduct by Defendant Bennett, under the second prong of the vicarious liability section of the UJI, Defendant Western Express cannot be said to have participated in, authorized, or ratified any such [nonexistent] conduct. The initial premise of this argument fails however, because the Court has found that there is evidence upon which a jury could find that Defendant Bennett *did* engage in conduct that could give rise to punitive damages.

Despite the evidence of such conduct by Defendant Bennett, it remains Plaintiff's burden to produce evidence of misconduct by Defendant Western Express. The general rule in New Mexico is that punitive damages are not imposed on an employer for the acts of an employee as a matter of simple *respondeat superior*. *Gillingham v. Reliable Chevrolet*, 126 N.M. 30 (Ct. App. 1998). Rather, there must be proof in some form of the employer's own culpable state of mind and conduct. *Id*. In order to impose punitive damages against an employer, its conduct must be found to be willful, reckless, or wanton, apart from the conduct of its employee. *Id.* As noted above, there are two scenarios spelled out in the UJI, imposing punitive damages upon a principal or employer vicariously, for conduct of its agent or employee. Of these, both parties rely only upon the second scenario: if the principal or employer in some way authorized, participated in, or ratified the conduct of the agent or employee.

Defendants emphasize Plaintiff's deposition testimony, wherein he admitted that he had no knowledge of Defendant Western Express's procedures or training, as set forth herein in greater detail on page 3.  Although not well articulated, Defendants' apparent position is that Plaintiff has failed to adduce any evidence that Defendant Western Express, through inadequate training and procedures, in some way authorized, participated in, or ratified Defendant Bennett's conduct.

While this argument is not well developed, a review of the court record indicates that Plaintiff has indeed failed to produce any evidence whatsoever that Defendant Western Express in some way authorized, participated in, or ratified Defendant Bennett's conduct.  Plaintiff contends that Defendant Bennett's actions at the scene of the collision must be considered as part of an evaluation of the totality of the circumstances to determine if Defendant Western Express should be punished for its reckless conduct as an employer.  Plaintiff merely relies on the conduct of Defendant Bennett, arguing that the "cumulative effect of [his] behaviours should show a jury that Western Express should be punished for their wrongful acts in causing the collision and [Plaintiff's] injuries."  (Pl.'s Resp. 7).

Plaintiff cites *Clay v. Ferrellgas, Inc.*, 118 N.M. 266 (1994) in support of his argument that actions at the scene must be considered. (Pl.'s Resp. 6).  Plaintiff also cites the Court to UJI Committee Commentary, which gives an example of a modification of the standard form of the instruction, when it may be necessary to specify the kind of conduct allegedly giving rise to vicarious punitive damages:  "If you find that the conduct of Trucking Company in connection with its screening and hiring of Truck Driver was reckless or wanton, then you may award punitive damages against it." *Id.*  Plaintiff contends that Defendant Bennett's disregarding safety standards, employing an obscene gesture as he drove over Plaintiff's vehicle, and lying to police

about the cause of the accident, are sufficient to establish an implication of reckless or wanton conduct by Defendant Bennett's employer.

The Court recognizes that the *Ferrellgas* case examined the "cumulative conduct" of employees to determine the mental state of the employer corporation, to determine if corporate recklessness had been demonstrated. *Ferrellgas* extensively relied upon a Kentucky case which considered actions of employees at the scene of a gas explosion, together with the policy and procedures of the gas company defendant in training its employees to handle such emergencies. *See Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389 (Ky.1985). The *Horton* case decided that viewed cumulatively, the evidence was sufficient for the jury to conclude that the totality of circumstances indicated "a wanton or reckless disregard for the lives, safety or property of other persons." *Id.* at 387-88. Specifically, *Horton* concluded that various acts of management by the defendant corporation, including but not limited to such things as failing to establish appropriate policy and procedures for training its personnel to handle dangerous situations such as the one at issue in that case, implicated the corporation as a whole in the charge of wanton or reckless disregard for the safety of others. *Id.* at 390. The *Horton* court determined that the negligence of employees, coupled with the fact that the corporation ignored repeated suggestions to revise investigatory procedures, constituted conduct of corporate wantonness or recklessness. *Id.* That court was very specific in noting that it was not finding potential liability for punitive damage based on a single, isolated, unauthorized and unexpected act of negligence by an employee. *Id.* It noted that the corporation in that case would not be punished if completely innocent and liable only vicariously. *Id.*

Relying heavily on the *Horton* case, *Ferrellgas* concluded that acts of employees should be viewed cumulatively to determine the mental state of a corporation, and that the evidence in

11

that case, supported an award for punitive damages. In reaching this conclusion, the New Mexico Supreme Court relied upon this evidence in the record: through its corporate policy (or lack therof), Ferrellgas allowed one employee to be ignorant of the acts or omissions of other employees with potentially disastrous consequences; Ferrellgas allowed its employees to violate state law by improperly installing equipment; Ferrellgas authorized or participated in an employee's continuing failure to file proper inspection forms which, had they been filed, probably would have prevented the harm to the plaintiffs. *Ferrellgas* at 271-72. The Court characterized the Ferrellgas company as having a "cavalier attitude toward safety regulation." It closed with this statement: "Given the high risk of harm that accompanies the handling of propane gas, the negligence of [two employees] and regular violation of safety regulations by Ferrellgas amounts to corporate indifference and reckless conduct." *Id* at 272.

In contrast to both the *Horton* and *Ferrellgas* cases, in this case Plaintiff presented no evidence whatsoever of management policy, procedures, acts or omissions by Defendant Western Express. There is nothing in the record before the Court to indicate that this collision, admittedly caused by Defendant Bennett, was anything other than a single, isolated, unauthorized and unexpected act of negligence by him. There is no "cumulative conduct" of any other employees -- only the cumulative conduct of Defendant Bennett on the day of the collision. Contrary to Plaintiff's assertions, the Court concludes that there simply is no evidence to support a jury conclusion that Defendant Western Express was reckless or wanton in its screening and hiring of Defendant Bennett. There is no evidence that Defendant Western Express authorized, participated in, or ratified Defendant Bennett's conduct.

## VI. CONCLUSION

In the Court's view, Plaintiff has created a genuine issue of material fact as Defendant Bennett's culpable mental state under a direct liability theory but has not done so insofar as the culpable mental state of Defendant Western Express is concerned, under a vicarious liability theory.

**WHEREFORE, IT IS HEREBY ORDERED** that Defendants' Harry Linford Bennett and Western Express's Motion for Partial Summary Judgment on Plaintiff's Claims for Punitive Damages ( ECF No. 39), is **denied in part and granted in part.** For the reasons stated herein, it will be up to a jury to determine whether the conduct of Defendant Bennett amounts to conduct that justifies a punitive damages award, however the issue of punitive damages against Defendant Western Express will not be presented to the jury.

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**